Page number 10-1545, Jan Karbin v. Marsha Lovinson Karbin. All right, we'll follow the same procedure. Counsel for the appellant. Good morning, Your Honors. Leslie Rosen on behalf of the appellant, Marsha Lovinson Karbin, by and through her guardian, Kara Hibbler. This is a one-issue appeal. I know you're familiar with the facts. And you're probably well aware that this is probably just a preliminary step before the final solution. Well, maybe, maybe not. I'm certainly smart enough to know I can't ask you to reverse the Illinois Supreme Court. So all I'm here today to do is ask you to distinguish this case. Well, can we even distinguish a case? I think so. Can we distinguish the existing authority? Because the distinguishing and disregarding sort of overlap there. No, I don't think so. Because in the Drews case, it said this is the rule to be applied in the proper case. And this is not the proper case. This is nothing like Drews. I generally don't like hypotheticals, but let's just assume for the sake of argument that the husband in this particular case is in prison. Okay. That's enough. Just add that. But that really changes it so much. Because here, this is the husband who's living with another woman in a house he owns with this other woman. That's worse than being in prison? I think so. I think so. He can't dissipate marital assets in prison. Here, he's living with somebody else in a house that he owns with her. I don't care if he's listed on the mortgage as having her as his wife or not. It doesn't matter. She's still listed on the mortgage. She's still listed on his checking account. So maybe if he dies, you can go and say it was an account of convenience. But to me, it sounds like a very phony situation. If I had a caregiver living with me, I'd have a power of attorney. I wouldn't put that caregiver on my mortgage. This is what this is. This is a woman who's got a husband, and he's living with somebody else in another state. I mean, to say that, oh, I love her. She wouldn't want this. We love each other. I understand those sentiments as you've expressed them coming from you. The question is, why should we ascribe those sentiments to your client? Well, I'm not saying you should. I'm saying that based on the case of In re Ke J, that you could send this back to the circuit court for the circuit court to determine whether those sentiments should be Yes, I'm not saying you should say, oh, go for the divorce. Let me suggest this, that it's delving into serious policy questions when a court can rule on best interest grounds whether a divorce should ensue. I mean, is it a divorce that is in the best interest of someone? Is a sterilization in the best interest of someone? Well, a divorce may well be, too, if they're not living together and he's dissipating marital assets. There's marital debt. He wanted her to pay part of it at first. But those other cases, those other matters can be addressed in other ways. There's certainly a separation. Who's to say that a petition for legal separation wouldn't suffice? And certainly, if dissipation of assets becomes part of that proceeding, there's protection there. I don't understand how a petition for separation would be viewed any differently than a petition for dissolution. If she doesn't have the right through her guardian to apply for a dissolution, once he's done it, once he's initiated it. But if the separation, if the legal separation provides additional protection for her that you believe she's entitled to, and it doesn't violate Drew's, there's the answer. I think if Drew's is an absolute prohibition, I don't see how a legal separation is any different than a dissolution. I can assure you that everyone who, I think legal separation is offered because there is a big difference between legal separation and divorce. I don't know where the authority comes from, though. I don't know where the authority comes from. From the existence of the remedy in our statutes. If it exists in our statutes, that makes it different from what else is allowed. I don't think, I don't see it in the Probate Act. The Probate Act allows for a guardian to proceed with legal separation. And under Drew's, a guardian, the ruling of Drew's is that a legal. Maybe you should have refiled this case in the Probate Division. Oh, believe me, I shouldn't have. If we send it back, do we send it back to Domestic Relations for your relief, or do we send it to the Probate Division? Well. We can send it anywhere we want, can't we? Yes, I would think that because this comes from the Divorce Division, it has to go back there, but then it would have to be remanded. It could leave at some point and go to the Probate Division, and wasn't there some sort of a ruling by one of the Probate Judges? Yes, Judge Riley ruled in Judge Kawamoto's absence that she could not proceed because of Drew's. So the Probate Court has already ruled that she can't proceed. Not on the best interest issue. Only because of Drew's, not on the best interest. Not on the best interest issue, just on the divorce issue. Just on the divorce. Judge Boyd sent it back to the Probate Division after Jan filed a motion to dismiss the counterpetition. But the facts here are so different than Drew's. They're so different that I really don't think you'd have any problem distinguishing it. And Drew's, the wife filed, didn't file an answer to the complaint. She immediately came in and said, uh-uh, we're not going there, you can't do this. That's the case where he filed. But are you saying that there's no changing of mind? Well, I thought there was the suggestion he filed it at the request of the guardian. Yes, that's their story. Tell me this. Well, tell me this, if your kids said to you, divorce dad, would you do it? We don't allow questions from counsel's category. To me that's absurd. I would never do something like that. It doesn't make any sense. They say, yes, I did it for Kara. Kara asked me to. But that would go to the best interest. Are you saying that he can't have a change of mind? That's what distinguishes this case from Drew's? No. He can't change his mind once he's filed? I'm not saying that. I'm saying that he participated in this dissolution. He initiated it first, which is different than Drew's. He initiated it. I would say he waived any disagreement with it by filing an answer to the counterpetition, and he participated in discovery for almost two years before he went, oh, they're getting too close. This is hurting my Parkinson's. I have to stop it now. It's just too painful. In the meantime, the lawyer for the guardian hired for the mother is delving and delving and saying there's dissipation. You're not telling us that there's W-2s missing, there's money missing, and all of a sudden he realizes he can drop his case and put an end to the whole thing. That is not Drew's, and I think that that is just so unfair. What was the settlement agreement that had been effectuated in the probate? The settlement agreement is in the record, and I must stop. My copy of the brief, by the way, is missing. Table of contents of the record on appeal. I don't know if yours is, and if so, I'll send over nine copies today. But the settlement agreement is in the record, and I read it over last night and this morning. The settlement agreement is between the father and Carol. It is not between the father and the mother. And what is it all about? What happened in that, and you'll study it yourself, and I've only read it, and I'm sure my opposing counsel will fill you in more carefully. He had borrowed money on their house that they own jointly. He had taken out a $60,000 home equity line of credit. There was some problem about it, and it settled that. How they were going to do that and how they were going to get rid of the marital home, which was obviously gotten rid of. I'm not the divorce lawyer or the trial court lawyer in this case, but it took care of that. And there's a provision in the settlement agreement that says, if there are any breaches of this settlement agreement, it will be null and void and will act as if it doesn't exist. So it did not take care of the whole kit and caboodle here. There is still a divorce that's appropriate. You started out, Justice Garcia, with saying, isn't this an intermediary step? I mean, if you can't distinguish this, then I'm hopeful it's an intermediate step because I really do think that Drew's is outdated. I think that if it had been a part of the inmate KEJ case, you might have considered that case differently. But I think that KEJ, which allows for a guardian to consent to sterilization. KEJ wasn't really considering Drew's. Not at all. It was never mentioned to this court, is my understanding. But it should have been. There's a difference. The KEJ case wasn't really governed by Drew's. Well, I think that if you are saying in that case, and as you said in that case, that a guardian, under the right circumstances, could consent to sterilization, which is a totally irreversible and very, very personal decision, then I think that a guardian should be able to consent to a divorce, which is so impersonal in this case. It's unbelievable. This is only about money. There's nothing personal. If Jen feels he's in love with her still and wants to call her, that's his prerogative. But this is only about money. All right. We'll give you time for a question. Okay. Thank you very much. Good morning, Justices. May it please the Court, my name is Andrea Ott. I'm here from the Law Offices of Jordan B. Reifus on behalf of Jan Carbin, the appellee in this case. Your Honors, this is a very simple case. In 1986, our Illinois Supreme Court held in Drews that absent statutory authorization, a guardian may not maintain an action for dissolution of marriage on behalf of the ward. It's very simple. We do not have a statute in Illinois that permits the guardian to pursue dissolution of marriage under the facts in this case. And, in fact, there is only one statute or piece of the guardianship statute that addresses the guardian's ability to pursue dissolution at all, and that is that a guardian may only pursue a dissolution of marriage where the intent of the ward is clear because the ward filed the dissolution case before being adjudicated incompetent. Why can't the intent to be discovered after guardianship is established, if it's clear? By way of best interest. Well, in the Burgess case, which actually addresses the exact same issue that the legislation addressed around the same time, they draw a very important distinction between the time when the ward is incompetent and makes that decision when they're competent versus afterwards. It's because of these deeply rooted compelling policy concerns. Marriage is very different than any other issue that a guardian may petition for. But there's no question that the relationship between the parties can change dramatically after the person has been declared incompetent. Isn't that true? That is absolutely true. This is a practical matter. Well, then, what's the solution for the guardian of the incompetent person if they feel it's in the best interest of the incompetent person to be divorced from the person? Well, our courts have decided that the compelling policy reason, the risk of a ward becoming divorced when they don't want to be divorced, outweighs... Any other risk? Wouldn't that be what a best interest hearing would determine? Maybe there is a desire to be divorced. I would argue that I don't think that a best interest determination can really get to the heart of whether or not a ward truly wants to be divorced. Well, if it can't, then it can make that conclusion. Can it not? Well, why would we? If it cannot and there's a risk that a ward would be divorced when they don't want to be divorced, why would we give the guardian the ability to do that? Well, the guardian isn't going to make the decision. The court is going to determine whether it's in the best interest to allow that proceeding to go forward. Right. What about the situation, what if it were true that the spouse of an incompetent was dissipating the assets of the incompetent so that the person would no longer have the ability to be cared for? Should the court take a blind eye to that? Absolutely not, Your Honor, and that is why there are other ways to address those underlying issues of dissolution of marriage. A best interest proceeding could also get the court, the probate court could take control of the assets. In a best interest standard in dissolution? Right. What the judge said earlier was that there's another avenue for the... Legal separation is the other avenue. Well, but there's another avenue for the guardian to pursue, go directly into probate. Right. The best interest is tossed out there as if best interest arises maybe out of common law, but my dealing with best interest comes out of statutes. And until there's a statute that says that we can grant an incompetent person a divorce based on best interest, I don't see how a court can establish that on its own. I agree. I agree. Your Honor, the appellant is arguing that this case is... Isn't that what the probate judge concluded? I'm sorry? Did the probate judge, when it went there briefly, didn't the judge conclude that the guardian could not pursue a dissolution? Yes, Judge. And that went back to the judge in domestic relations, who just simply affirmed that order? Yes, Your Honor. And, in fact, probate, if there's a law, there's an area of the law that is very statute-based, it is probate. All right. You can go ahead and wrap up. Okay. I just do want to address that this case really is no different than the Drews case because Jan only filed the petition for dissolution at Kara's request. It's absolutely no different. It's not about money. Jan loves his wife. He took care of her for seven years after she became disabled and only had to stop because of his own disability. So really there's no distinction between this case and Drews. So, Your Honor, that's why we ask that you affirm the decision of the lower court to dismiss Marsh's petition. All right. Thank you. Thank you. Ms. Rosen? Question or points? You'll have two minutes, okay? Okay. I'll talk quickly. I always do. Why can't you pursue an answer in probate, alleging all these things that you're alleging, that this is all about money, it's all about dissipation? Why can't you do that? We can do that, but I want to correct Justice Cahill said the probate court, can't they take control of the assets? Probate court has no authority to take control over marital assets. There's marital debt. There's marital assets. Probate court can take care of it in part, but not in full, number one. Number two, Justice Garcia said that, you know, this is a highly regulated, the probate act is very thorough and it's very important. But, you know, in this case, you're not completely correct, because as to the sterilization. Once again. I'm sorry. KEJ, there was no authority statutorily for a guardian to consent to a sterilization. That case was decided, and thereafter, the legislature followed, and then the legislature put in a statute about sterilization. So it can go the other way, and it has. I will say that if we were to go, if we were to not see it your way, we would certainly express something like that. Thank you. That's something. And three, my opponent said that the best interest hearing can't determine whether the disabled person wants a divorce. If a best interest hearing cannot determine that, I don't know how my opponent can say that this is a loving couple. Why can't the probate court decide issues involving property of a disabled person? The marital property. There's no authority over marital property. What property is the authority over? The estate. Could there be a division of the property? Why does estate in any way have anything to do with marital property? Well, because some property is estate property, and some of it is hers, and some is marital. And the probate court doesn't have authority over marital property. Couldn't there be a division of the marital property? How can you do that? I don't know. I'm sorry, I can't answer your questions. I think you can. I don't know, but this would be the more traditional way. This would be the more appropriate way. This would put an end to it right now. He can inherit. Appellee's brief says, oh, I may die first and she can get my money. You make it as tenants in common. The law allows the guardian to defend a dissolution, but it doesn't allow her to pursue. Yes. And you believe that's antiquated. I believe that's antiquated, but I don't believe you have to go that far. But, yes, I do believe that's antiquated. Oh, you believe we can distinguish. Absolutely. Finally, when I say he's a loving husband, again, he cared for her for seven years until he couldn't anymore because of his Parkinson's. If he was so loving, why aren't they living together? This decision wasn't based on any of these conflicting discussions about what's fact and what's fiction. Right. You've got my point here, and thank you very much. All right, thank you. The case will be taken under advice in five minutes.